Good morning. You are veterans, so you know that we allow 15 minutes per side, and we are very good about a few minutes of rebuttal, and we do want to hear what you have to say. If we are engaged in an interesting colloquy, we will go beyond that time if you have us really going here. So we want you to be aware of that, and you usually do. So with that, let's proceed unless there are any issues that either of you have. No? Okay. Let's proceed then. Thank you. Ariane Stein May it please the Court and Counsel, I'm Ariane Stein on behalf of Ricky Watson. I'll primarily be discussing the first issue of the briefs, but I can answer questions the Court may have on any of the arguments. The prosecutorial misconduct in this case prejudiced Watson and denied him of his right to a fair trial. Prior to trial, Defense Counsel requested that the State disclose the surveillance location of Officer Leahy, who was the only eyewitness. The Court held an in-camera hearing, which was out of the presence of Defense Counsel, and at the hearing, the State told the Court that the officer observed a transaction from an abandoned building across the street, and the abandoned building was no longer abandoned, so there were safety concerns for the residents and the landlord. The Court agreed and denied disclosure to Defense. However, at trial, the officer testified that the building was no longer being used for surveillance, and so those safety concerns were actually no longer present, and the prosecutor gave incorrect information then to the Court at that in-camera hearing. Now, the State, on appeal, does not deny that the prosecutor gave incorrect information. Under People v. Price, when the State wants to invoke this qualified surveillance privilege, the State has the initial burden to show that the surveillance location was either on private property with permission of the owner, or in a location whose utility would be compromised. And under this standard, the State did not establish the need to invoke that privilege. First, the building was not private property. At trial, it was established that it was abandoned, and it was not in a location whose utility was useful, because it was no longer being used. Thus, the State failed to meet its initial burden that it had to under Price. So you're saying it was no longer being used for surveillance purposes by police, as opposed to people residing there? Correct. Correct. It apparently was clear that there were residents and a landlord taking care of the property at the time of trial, but, right, it was not being used for surveillance by the police. Would there be any potential danger posed by the disclosure, given the fact that people are living there, were living there at the time of trial, as opposed to before? It's hard to see what that danger would be. And if there was such danger, it was the State's responsibility to disclose that and go over that with the trial court below. Is it possible that the judge might have thought, well, if they know that it's been used before, they may go and destroy the building or do something to one of the tenants under the mistaken belief that somebody allowed the police to get in there, or may again allow the police to get in there? Isn't that a reasonable consideration? It's possible, but, again, we're dealing with a very important right of the defendant to cross-examine and confront witnesses against him. And People v. Knight and People v. Price make clear that the defendant should be given, the closure should be given of the location. What we're engaged in is line drawing, you would agree. The judge is trying to say, I want to allow you to have the most effective cross-examination you can have, but I don't want anyone to get hurt or any other unforeseen consequences to occur. And you're saying that the judge was unreasonable in doing that here? Well, I do believe that the judge was unreasonable, but I think that had the judge been given the correct information by the prosecutor at the time, that the judge would have not come to that decision and would have actually disclosed the surveillance location. So what was the part, what was the information that was withheld, or inaccurate? That it was no longer being used for police surveillance. And is it your opinion that the testimony of the officer was that it was not only currently not being used for surveillance, but it was not going to be used again because it was now occupied? It was unclear as to why it was no longer being used, whether it just wasn't useful to police and they weren't using it, or because it was occupied. But the state, again, it's the state's responsibility. They bear the initial burden here at this in-camera hearing and they didn't turn that over to the state court. The judge gave the defense pretty wide latitude in their cross-examination of the officer on those surveillance issues. What would have been different if they'd actually known the specific address? Well, in People v. Knight and People v. Price, the defendants were also allowed to ask more specific questions, or similar questions to the incident case, such as distance from the location, if there were any obstructions, the same type of questions that were asked here in Price and Knight. Is there anything that they didn't ask because they did not have access to the specific location? Well, it's somewhat unclear, but again, defense counsel brought to trial, either in our case or in Price or Knight, could have gone to the location, investigated, and then had information available to impeach or contradict Officer Leahy. That was not available. So that's what they were sort of preempted from an opportunity that they might have had to impeach, but for the fact that they didn't have a chance to actually go up to the place and look at it. Right, exactly, exactly. And even if the state had met that initial burden in the case, Watson established what he needed to under Price. That disclosure of the location was relevant and helpful to the defense, or essential to the fair determination of the cause. And here the state's entire case rested on Leahy's testimony about what he saw from that obviously relevant and essential to the fair determination of the cause. People versus Knight held that when a case turns almost exclusively on the officer's testimony, disclosure of the surveillance location must almost always be ordered. Again, because the case here turned almost exclusively on Leahy's testimony, disclosure should have been granted had the state provided the court with accurate information. How do you deal with the cases that followed and distinguished Knight, the Quinn and Bell cases? The Quinn and Bell cases, I'm not as familiar with the facts of those. They weren't flushed out in the briefs. But I do believe that Knight and Price, because of the specific facts of those cases, are so similar. And in fact, in both of those cases, the court reversed on plain error. And here we have defense counsel preserve those issues in this case. And not only did the prosecutor give incorrect information to the court concerning the surveillance location, but the prosecutor made improper comments during closing arguments that compounded the prejudice and error against Watson here. The prosecutor – Before we get to that, we do want to hear your comments about that, the reasonable versus reasonable doubt. In the Bell case, the court indicated that the police officer was still cross-examined about various aspects of the surveillance, lighting conditions, any obstructions, the familiarity with the area, whether he used binoculars, and the distance of any other individuals during the time of the arrest. How is that in any way different from what the officer was subject to in this case in terms of cross-examination? It's actually very similar to what the officer was subject to here. But again, I would point back to Price and Knight, where the court doesn't go over the exact questions that clear that the defense was allowed to ask the officer distance from the transaction spot and any obstructions, weather conditions, lighting. So again, we have the exact same facts in those cases. And the courts there found that the defendant was denied his right to confront witnesses against him. In this case, the defense attorney said at one point in some pretrial, it's okay, we said that because he also believed that the building was still being used for surveillance? It's unclear. It's unclear if the defense counsel actually had that information, whether or not the surveillance spot was being used, or whether there were safety concerns, because all of that was kept from him. It was all done at the in-camera hearing. And so it's unclear. But it also could have been said in the context of he hadn't gotten any information about this from the state, and the court was going to deny disclosure. So he just wanted some information so that he could provide a defense for his client. And he did preserve the issue? Correct. That's correct, Your Honor. And the error here is significant, because the state's ability to invoke this surveillance privilege is not something that can be taken for granted. Invoking the privilege, again, limits the right of a defendant to cross-examine witnesses against him. And at this in-camera hearing, it's one of the few times in the otherwise adversarial proceedings where the defense is not allowed to participate. So the state has a huge responsibility to make sure that all information given is accurate. Now, again, not only was this part of the error prejudicial, but the state's improper comments during closing argument compounded this error against Watson. The prosecutor told the jury, I wish I could give you those police reports, and you would come back out and find defendant guilty. It's improper to tell a jury that there is evidence it is not allowed to hear. In People v. Emerson, the Supreme Court held that they reversed the case. The prosecutor told the jury that there was evidence concerning the defendant's arrest that they couldn't share with the court. And the court said that was improper and should not be continued, and they went ahead and reversed the case. The prosecutor here also attempted to define reasonable doubt, which is improper. In the recent case of People v. Jackson, this district admonished the prosecutor not to make such comments on retrial. And lastly, the prosecutor told the jury that the defendant had the same subpoena power to call the co-defendants, which had the effect of shifting the burden of proof to the defendant. Now, each of these errors was improper, but certainly the cumulative impact of these errors denied Watson a fair trial. And contrary to the state's claim, the error was not harmless, in part because all of these comments bore directly on defense counsel's ability to question Leahy's testimony, which the defense was not allowed to do concerning the surveillance location. And the error was not harmless because, again, contrary to the state's argument, the evidence here was not overwhelming. We have Officer Leahy testify that he sees Watson go into a gangway and pick up a green cigarette box, but it's dark out. And Vita Barnes, who was a defense witness, not impeached, testified that there's a motion detector light in that gangway, but it only goes on when someone's at the bottom of the staircase. And Leahy made clear that the cigarettes were not at the bottom of the staircase, so there would have been no light in the gangway. Also, Leahy testified he was able to see the If he's viewing from across the street, then the alleged buyer's back would be blocking his view of what was seen. There were also several inconsistencies between the officers, and significant details were left out of the police report and from their testimony. All of the officers denied entering Vita Barnes' home, and they denied detaining her son. But Barnes testified, again, Barnes was not impeached or contradicted, testified that the officers came in her home for a period of time, searched around, and that they did detain her son. So all of these problems with the evidence show that it was not overwhelming in this case. Unless there are any more questions on this issue, the prosecutor withheld information concerning the surveillance location, and thus Watson was unable to fully cross-examine the key witnesses at trial. That error, coupled with these improper remarks during closing argument, denied him a fair trial, and he requests that this court remand the case. Thank you. Thank you, Counsel. May it please the Court, Joan Frazier on behalf of the people. Good morning, Your Honors. Good morning. Good morning. It used to be that claims of prosecutorial misconduct were only brought up in the most egregious, blatant cases, and it's very unfortunate that now this claim is tossed around on a very regular occasion, as in this case, where the defendant doesn't agree with what the state did or what the state said. It's not just a mistake, it's not just an error, it's prosecutorial misconduct, and it's a shame that those kind of serious, serious allegations are made in cases like this where they are far from true. It's inappropriate and it's improper. The first case, I could not disagree more with the recitation of facts the Counsel just presented to the Court. The state did not withhold anything. The state said in its motion in response to the defendant's motion to disclose that it wanted to maintain the integrity of the building for future use. Now, that is the test. That is the test that applies. Also, the Counsel misstated, and I'm sure it was a mistake, Defense Counsel was in fact present at the in-camera hearing. It's right there in the appendix to the defendant's brief. It says there was argument from both the state and the Defense Counsel. Defense Counsel was present. The state argued that the landlords and the occupants of the building should be protected, and this was true regarding whether there was surveillance happening there or not. Nobody asked the state, well, is there surveillance going on at the building right now, right today? Nobody asked that. Would they be entitled to that information even if it were requested? I mean, is a defendant in a pending criminal case entitled to know whether police are out there trying to bust people? No, of course not. Of course not. And as I said, the state said we may be using it for future use. So Defense Counsel was perfectly satisfied with that. He said, I'm not looking for a pinpoint location. I just want to know whether it's east or west. He was perfectly satisfied with that. There was no showing whatsoever that the state withheld anything. And furthermore, the defendant was able to find out essentially everything before trial. The lighting conditions, the surveillance officer's elevation, the distance, binoculars, east or west, where were the blinds, whether there were curtains. It was all out there. Then at a trial, the state itself elicited testimony while it was directly across the street. It came out there that the officer watched through a wood frame window, single pane glass, no blinds, 15 by 25 binoculars, etc., etc., etc. Everything but the color of the wallpaper. Did they know what floor it was on? They told them that too, didn't they? Yes, at trial. Couldn't a defense attorney figure out which building? I mean, if you think of the laws of physics, it'd have to be that window right there in order with the description. Yeah, it's across the street. The elevation is however many feet. It was perfectly obvious. And defense counsel had no trouble with it at trial. But he did object. He did put it in his motion for new trial. But at trial, there was no issue. It was fine. They had all the information that they wanted. And even today, in the defense brief, the defense reply brief, there's still a question out there. What more did you want to know? What more did you want to know that you had a right to know? It was all out there. And the state did not withhold anything. Now, in night, the court vaulted defense counsel for not making an offer of proof of what he wanted to find out. In this case, defense counsel said he was perfectly satisfied with what he heard. In price, the problem was that the court did not undertake the balancing inquiry. What's the state's right to withhold versus the defense's right? Can you explain that a little more? What you just said, the defense counsel is perfectly satisfied? I mean, why do we have an issue then? Before trial, he was. Before trial. When he said, I don't need a pinpoint location. All I'm looking for is elevation. I just need to know whether it's east or west. And with that, I'm ready to go to trial. That's what he said. And in price, the problem there was that the trial judge didn't make the balancing inquiry. He didn't undertake the test. And in this case, the court clearly did. The standard of review for that issue is abuse of discretion. And defendant can't show. Defendant has fallen very far short of showing that. The next, the comment regarding the police report. Defense counsel, in his own closing argument, and this distinguishes it from the case defendant relies on, the entire theme of it was the police reports. And everybody knows police reports are not admissible evidence. And it wasn't really so much about discrepancies, although there were a few. It was, what's not in the police report? How come this isn't in the police report? Why isn't that in the box? And at a certain point, when that's the defendant's entire theme, it begins to beg the question, well, what is in the police reports? But the state can't say. Obviously it can't say. So the state made the comment that it did. Now it's being cited as prosecutorial misconduct. Now it's plain error. Defense counsel didn't even object to it. He didn't raise it in the motion for new trial. It was a brief comment and there is no possibility that the state's one comment was the reason that the defendant was convicted. I would compare the state's comment to the one in the case of Ray, where the state says, I have all of this that says that this is a lie. You would have known it was a lie. The state's comment was nothing like that. And the other problem in Ray was that the state made, unfortunately, made many, many objectionable comments. Here the state did not. In the Sheaf case, the state said, if I had my way, I would hand you all these police reports and say, you go back in there and find that he's guilty. The comment here was not like that. The state said, the law says police reports are not evidence. The reason is to protect the defendant and to allow the defendant the ability to cross-examine the witnesses. So the claim was forfeited. It wasn't objected to. And it hardly amounts to prosecutorial misconduct. There was absolutely nothing wrong with the state's comment about the burden of proof. In the defendant's closing argument, he said, where is Washington? Where is Jackson? Washington was the co-defendant, Jackson the co-offender. And he knew perfectly well that the state did not have the equal opportunity to call these witnesses because we couldn't compel them to incriminate themselves. So it was perfectly proper for us to respond in that manner. And I would point out that if the court looks at the cases the defendant has relied on in his brief, not one single one of those cases involves a co-offender or a co-defendant. The state's reasonable doubt comments were also perfectly appropriate. Again, this claim is forfeited. It's not a motion for new trial. It's very similar to the comments in the recent case of Ward, where the state said in closing argument the phrase beyond a reasonable doubt does not mean guilty beyond all shadow of a doubt. Now, the Apollo Court talked about the Martinez case, which the defendant cites in his brief, calling it a watershed case, because that was one of the first cases where the court said basically the state shouldn't even mention the concept. And in Ward, the court said when you look at that case, the court didn't rely on any supporting authority. And there's really a, it's just a conclusory opinion. So the court said, other courts, the Ward court said, other courts that have looked at these kind of comments have found them proper. And they are proper, or at least non-proper. So that claim as well was actually perfectly appropriate. There are quite a few cases that say that an attorney in closing can talk about the jury instructions, can talk about the burden. It's certainly admissible in a civil case. But how do you get around not talking about reasonable doubt as a prosecutor or a defense attorney? You have to talk about the concept of closing argument. You do. I absolutely agree, Your Honor. I think there are lines that shouldn't be crossed where you start telling them what your personal view is or something of that nature. That would be wrong. Yes. But I don't think there's anything wrong with saying there is this concept that you have power and the judge will instruct you on it. That's perfectly okay. Of course, Your Honor. You know, the cases that the defendant relies on give you an illustration of where you cross the line. In Eddington, where the state said, as long as you have some doubts, that doesn't mean the defendant is not guilty. Or Jackson, where the state said if the state had to cross every T and dot every I, everyone could go ahead on a killing spree. You don't have anything like that in this case. It's over the line. Do you think that using the word reasonable by itself without adding the word doubt created the impression that it was a sort of positive act by the jury instead of a negative one? If you think it's reasonable that he's guilty, then go ahead and find him guilty instead of if you cannot find beyond a reasonable doubt that he's guilty, you have to find him not guilty? Did it switch it? No, I don't think it did, Your Honor. And I don't interpret it that way. And I would that the court gives the jury the instructions and that's the law they have to follow and reasonable doubt was correctly defined there. Can we go back just a half a second? This is a case in which Officer Leahy and Officer Zapata and several officers all testified and there were a lot of I don't remember, I don't remember, I don't remember. Is that correct? I don't think that is correct. Was that one of the reasons that, was that information that they didn't remember in the police reports? If I'm remembering it, I think what we're talking about is whether they could recall the physical description of the defendant and the co-defendant and the offender and that's what they didn't remember. What they were wearing, what they looked like, who arrested whom, who detained whom, who arrested who in the car? Well, I don't think it went that far. I don't think it went quite that far, Your Honor. And really it doesn't matter because this is not a case where the police were searching out a defendant. These people were on the scene. Officer Leahy never lost surveillance of the defendant and so it's really not terribly relevant whether a trial they could remember what these people looked like. They were arrested on the scene right away. So I don't think that was a material circumstance. Finally, if there was any error of the claim, the evidence was in fact absolutely overwhelming. This defendant was caught dead to rights. The officer Leahy had him on surveillance the entire time. He was using binoculars. It's very critical that he never lost sight of him. It's not that the defendant went inside a house and then came back again. He never lost sight of him. He was arrested right away. The people found the cigarette box in the building. They individually packaged heroin. So if there was any issue, which there was not, it would have been harmless beyond a reasonable doubt. So we ask that the Court affirm the defendant's conviction and sentence. Thank you. Thank you, Counsel. Rebuttal, please. Just a few brief comments in rebuttal, Your Honors. Concerning the officer's testimony, the Court is correct. There were a lot of I don't knows and I don't remembers and inconsistencies that were said throughout things that were left out of the police report and just inconsistencies between the officer's testimony. And that did cast doubt on the evidence as a whole. The State mentioned that the defendant's index to the brief shows that defense counsel was present at the in-camera hearing. And if the index does show that, then it was a mistake on our part and we apologize. But if you look at the report of proceedings, it's clear that to the part before the in-camera proceedings where there was argument by both sides as to why the defense wanted that disclosure. Even if defense counsel was present, the State still gave the Court inaccurate information. Again, this qualified privilege is one of the few occasions where disclosure of discovery is denied to a defendant. So it's a very important privilege and should only be used if accurate information has been provided to the Court. Would it have to be labeled prosecutorial misconduct in order to warrant reversal? Well, I think in the context of the entire case here that there were all these improper comments during closing argument which have historically been called prosecutorial misconduct. No, but just on the surveillance issue, if we separate that out, in order to qualify as something reversible, would we have to brand that prosecutorial misconduct? No, it doesn't have to be called prosecutorial misconduct, Your Honor. Just that the Court wasn't provided with all the information would have come to a different outcome had the judge been given information about that surveillance location. The State also argues that defense counsel said he was satisfied with the information given. But in People v. Knight, the Court points out that defense counsel never explained why that exact location was needed or necessary to help the defense. Nevertheless, the Court there reversed. The same situation here. What about the fact that your worthy opponent tells us that the lawyer said, okay, I'm ready to go. I have enough information. Let's go forward. Doesn't that remove that issue from the case? Well, I think that... You can't do data trial and come back and say, oh, I actually did need more and I should have been given more. I mean, once you say that, that's... Well, it's possible that defense counsel had analyzed and seen Knight and Price and knew that if there were safety concerns, he wasn't allowed to ask for information beyond a certain point. So he could have assumed that correct information had been given to the Court, there were safety concerns, and he didn't want to press that. So he just wanted to get as much information as he could in order to provide an adequate defense. And couldn't you have extrapolated from the information you had to figure out where exactly the officer was? It's possible. Again, we don't know specifically what the location looked like. The officer said it was a building across the street. But, you know, again, had defense counsel gone and seen that that wasn't exactly the situation, that could have provided a problem. And also, again, we go back to Knight and Price where the defense counsel was still able to ask similar questions. The Court still said no, that we should remand these cases. If you do vectors and say, you know, 515 feet and second floor, this is, it's got to be that place. It isn't that one, that's too far, that's too close. It's got to be this other one. Couldn't you do that? It's possible. It's possible he could have done it. But, again, the State has a responsibility to disclose as much information as possible for the defendant. And when the defense counsel said, okay, I don't want a pinpoint location, I've asked this before. He was still, as far as I can tell from this, thinking that there were safety concerns because he, as was the judge, still under the impression that that building was still being used for surveillance. Is that a correct statement? I believe that's correct, Your Honor. That's correct. And the State has noted that the standard of review here for the surveillance issue is abuse of discretion. Now, had the Court been given accurate information, then that, under People v. Knight, that would be accurate. However, because here, the Court really wasn't allowed to use his proper discretion because he wasn't given full information beforehand. So it's a legal question that we can review de novo. The State also, in the briefs, cites a 1973 case for abuse of discretion under the improper comments section of the argument. And People v. Wheeler has made clear in 2007 that de novo is not a standard of review here. Concerning the comments about the police reports, the Defense Counsel did mention police reports in closing argument. But everything that he mentioned came out during cross-examination, things that Officer Leahy left out of the reports, significant details. And those are proper comments. An invited response would have been for the State to say that, although these significant details were left out of the reports, nevertheless, the officer was That's not what the State did here. Rather, the State said that, I have information in this report that when you would read it and come back and find the defendant guilty, which actually mimics the language in sheaf, which the State has pointed out. It's the exact same language. And it's error to tell the jury that there's evidence that they were not allowed to hear. And in People v. Garosteata, the Court held that an invited response allows a party who is provoked by his opponent's improper argument to respond in kind. None of the defense's arguments here were improper. They were all properly based on the evidence and used to support the defense. Again, all of the comments bore directly on Defense Counsel's ability to question the State's key witness, which, again, Counsel was not allowed to do concerning the surveillance location. Because this error prejudiced Watson, we ask that this Court remand the case. Thank you. Thank you, Counsel. Thank you. We thank you both for your submissions and the cases taken under advisement.